William L. Larkins, Jr., OSB #812882
wlarkins@lvklaw.com
John C. Rake, OSB #105808
jrake@lvklaw.com
Bridget M. Donegan, OSB #103753
bdonegan@lvklaw.com
Larkins Vacura Kayser LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: 503-222-4424

Attorneys for Plaintiff Moda Health Plan, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MODA HEALTH PLAN, INC., | Case No. |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | (Breach of Contract) |
| SWISS RE LIFE & HEALTH AMERICA, INC., | DEMAND FOR JURY TRIAL |
| Defendant. | |

Moda Health Plan, Inc. ("Moda" or "Plaintiff") makes the following allegations, which are based on Moda's own knowledge, information, and belief:

## I.      <u>INTRODUCTION</u>

1.      Moda brings this Complaint against Defendant Swiss Re Life & Health America, Inc. ("Swiss Re" or "Defendant") to recover $1,802,674.10 for losses Moda sustained when Swiss Re refused to honor its obligations to Moda under a reinsurance contract.

COMPLAINT FOR DAMAGES                                                                                   Page 1

2.      Defendant Swiss Re provides reinsurance.  Reinsurance is insurance for insurance companies.  It serves to transfer some of the risk that insurance companies incur when insuring individuals.  By purchasing reinsurance, insurance companies purchase protection against sustaining the full losses involved in paying certain claims—losses that might drain their reserves or cause wide fluctuations in their financial condition.  Just as individuals act prudently to protect themselves from risk and surprise by purchasing insurance, insurance companies behave prudently to protect themselves by purchasing reinsurance.  The availability and dependability of reinsurance helps insurers assure their continued solvency and keep premiums low.

3.      Moda provides high-quality, affordable health insurance to individuals.

4.      Moda entered an "excess of loss" reinsurance agreement with Swiss Re with an effective date of January 1, 2016.  The parties subsequently renewed the reinsurance agreement, effective January 1, 2017.  The 2017 agreement is substantially the same as the 2016 reinsurance agreement.  This dispute centers on amounts owed under the 2017 reinsurance agreement (the "Contract").  In purchasing reinsurance from Swiss Re, Moda acted on the belief that, if it followed the terms of the contract, it would limit its risk and protect itself from sustaining losses above certain threshold amounts.

5.      Moda paid substantial claims for medical care that occurred in 2016 and 2017 for one of its plan members, an individual with Hemophilia A—a genetic disorder that can be treated with infusions of coagulating Factor VIII and ordinarily does not lead to reinsurance claims— and who had also suffered an unanticipated accident that resulted in a spinal injury and major surgery that was wholly unrelated to the member's hemophilia.  In 2015, prior to entering the

2016 reinsurance agreement with Swiss Re, Moda disclosed this individual and his health condition as part of the underwriting process.

6.    Moda took all steps necessary under the Contract to be reimbursed by Swiss Re for the claims Moda paid on behalf of this individual, which totaled over $3 million for 2016 and 2017 combined.  Moda disclosed the plan member's claims when it was required to do so under the Contract.

7.    When it came time for Swiss Re to reimburse Moda for the 2017 claims, though, Swiss Re refused.  Swiss Re incorrectly claimed that Moda had not followed the requirements for disclosing this member to Swiss Re.  In doing so, Swiss Re breached the terms of the Contract and failed to provide Moda with the bargained-for coverage.

8.    Moda now brings suit to enforce the Contract and recover its damages of approximately $1,802,674.10 from Swiss Re's breach.

## II.    PARTIES

### A.    Plaintiff

9.    Plaintiff Moda Health Plan, Inc. is a for-profit health care plan doing business in Oregon and Alaska, with its principal place of business in Portland, Oregon, and incorporated under Oregon law.  Moda conducts the vast majority of its business in Oregon.

### B.    Defendant

10.    Defendant Swiss Re Life & Health America, Inc. is a foreign business corporation incorporated in Missouri with its principal place of business in New York.  It is a subsidiary of Swiss Reinsurance Company Ltd., which is based in Zurich, Switzerland.

COMPLAINT FOR DAMAGES                                                    Page 3

### III.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1332.  First, the amount in controversy exceeds $75,000, exclusive of interests and costs.  Moda seeks $1,802,674.10 in damages.  Second, this controversy is between citizens of different states.  Moda is a citizen of Oregon, and Swiss Re is a citizen of Missouri.

12.    This court has personal jurisdiction over both parties.  Moda is subject to this Court's general personal jurisdiction because it is domiciled in Oregon.  Swiss Re has sufficient minimum contacts with Oregon such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice.

13.    Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claim occurred in Oregon.

### IV.    FACTUAL BACKGROUND

14.    Swiss Re describes itself as "a leading wholesale provider of reinsurance." Reinsurance is a form of insurance purchased by insurance companies in order to mitigate risk. Essentially, reinsurance limits the amount of loss an insurer can potentially suffer.  In this way, it protects insurance companies from financial ruin, which in turn protects insurance companies' customers—in this case, insured individuals—from uncovered losses.  Accordingly, Swiss Re describes the service it provides as one that exists to "enable the risk-taking upon which growth and progress depends."

15.    Moda is a multi-faceted organization with a full line of high-quality and cost-effective healthcare plans for individuals and groups.  Moda's mission is to provide access to high-quality, cost-effective healthcare.  In doing so, Moda also strives to provide excellent service, act with integrity, be a good steward of the resources and programs entrusted to it by its

customers, be an outstanding community citizen through gifts of its time and resources, and facilitate the delivery of evidence-based healthcare.

16.     Moda and Swiss Re first entered into a medical excess reinsurance contract in 2016.  Moda and Swiss Re entered into a medical excess reinsurance contract again in 2017.  Both contracts were substantially the same with regard to the substantive provisions and the coverage Swiss Re provided to Moda.  Under the terms of each contract, Swiss Re agreed to reimburse Moda for certain claims Moda paid on behalf of individuals.

## A.     The Contract at Issue

17.     This dispute concerns the contract between Moda and Swiss Re for the 2017 calendar year (the "Contract"), which is attached as Exhibit 1.  Moda and Swiss Re executed the Contract on April 7, 2017, following negotiations that began in or around November 2016.  The Contract specified that it was effective from January 1, 2017, through January 1, 2018.  The terms of the Contract and the coverage provided were substantially the same as the terms of the previous year's contract between the parties.

18.     By the terms of the Contract, Swiss Re agreed to reinsure Moda's excess liability, subject to the terms, conditions, and limitations in the Contract.  In particular, Swiss Re assumed liability for an unlimited amount of claims paid by Moda in excess of Moda's retention of the following:   with respect to individual business, $600,000; with respect to group business, $850,000; with respect to Medicare business, $500,000.

19.     The Contract required Moda to report potential reinsurance claimants to Swiss Re only in certain limited cases and if defined circumstances occurred.  Specifically, Article XI, Section A of the Contract required Moda to notify Swiss Re in writing at the point when Moda knew or expected that the medical expenses incurred by Moda in connection with a member for

the calendar year had or would exceed 50% of Moda's retention (which, for Medicare business, amounted to paid claims in excess of $250,000).  Article XI, Section B of the Contract required Moda to advise Swiss Re promptly of all losses which Moda believed may result in a claim under the Contract and of all subsequent developments regarding a potential claim that Moda believed would materially affect the position of Swiss Re.

**B.    Swiss Re Did Not Require Moda to Complete a Disclosure Statement in Connection with Entering the Contract for 2017**

20.    When Swiss Re and Moda negotiated the original 2016 reinsurance agreement, Moda provided claims data for the prior five years to Swiss Re's underwriting team.  At that time, Swiss Re did not require or request that Moda provide any disclosure of whether any covered plan members were diagnosed with hemophilia or were receiving factoring products (which includes Factor VIII) for blood clotting.  However, the claims data Moda disclosed included the health plan member at issue in this case, referred to as "John Doe," as well as Mr. Doe's diagnosis of hemophilia.

21.    In November 2016, as the parties negotiated the renewal of the reinsurance agreement for 2017, Swiss Re provided a blank disclosure form at the end of a policy quote for Moda (the "Disclosure Statement").  The Disclosure Statement provided on November 22, 2016, sought information about "serious claims" so that Swiss Re could make underwriting decisions.  In particular, the Disclosure Statement sought disclosure of any member currently using factoring products.  Had Swiss Re required Moda to submit the Disclosure Statement in order to enter a 2017 reinsurance agreement, Moda would have again disclosed Mr. Doe as a plan member to Swiss Re and would have indicated that he was receiving factoring products.

22.    During the negotiations leading up to the execution of the Contract, Swiss Re explicitly waived the Disclosure Statement, stating that it was unnecessary for Moda to provide

it.  In written communications dated December 16, 2016, and December 23, 2016, Swiss Re's representative confirmed that it would not require Moda to fill out the Disclosure Statement enclosed with its original reinsurance renewal quote issued November 22, 2016.  Instead, Swiss Re indicated it would refer to Moda's submission of a Monthly Reinsurance Report submitted in November 2016, a report that compiled data about high claims from various sources internal to Moda, discussed in paragraphs 23 to 29 below.  On December 16, 2016, Swiss Re provided Moda with an updated quote for reinsurance under the new contract, and removed the disclosure page from the quote, indicating that its claim disclosure review was complete.  In further contract renewal discussions taking place later that month, Swiss Re's representative confirmed that Moda had no additional disclosure obligations: "I already removed the disclosure requirement in our proposal.  No conditions will apply."  Pursuant to Swiss Re's explicit instructions and representations, Moda, therefore, did not fill out the Disclosure Statement and did not provide it to Swiss Re as part of the reinsurance agreement renewal process.

C.     **Moda's Internal Disclosure Policies and Procedures**

23.     During the relevant period, Moda had internal policies and procedures that facilitated its compliance with the Contract's reporting requirements, as well as its own best practices for processing claims and ensuring sufficient reserves.

***The Large Claim Committee and Large Claim Report***

24.     First, during the relevant period, Moda had an internal process specifically designed to track claims above a certain threshold ("Large Claims") through an internal body called the Large Claim Committee.  The members of the Large Claim Committee included a Medical Director, Vice President of Claims, and representatives of the Actuarial Department, Medical Claims Department, Reinsurance Coordinators, and Healthcare Services; employees of

other departments also attended at times. Moda defined a "Large Claim" as a single inpatient claim or inpatient admission which appeared it would reach $300,000.00 or more in billed charges.

25. Moda identified Large Claims through multiple different procedures, and all Large Claims were added to a Large Claim Report. Moda employed nurses in its Healthcare Services department ("HCS") who continuously reviewed inpatient authorizations to identify potential Large Claims. Upon identifying a Large Claim, the HCS Nurse would fill out a Claim Notification Form, and this would be sent to the Large Claim Committee. Moda's Medical Claims Department also identified Large Claims and added them to the Large Claim Report. In addition, employees who worked in Moda's Inpatient Claims Department did an independent check for Large Claims and added any they identified to the Large Claim Report. Moda processed Medicare Advantage inpatient claims by a separate department from all other medical groups, and Medicare claims that met the threshold were also added to Large Claim Report and sent to the Large Claim Committee. The Large Claim Report was maintained by the Medical Claims and HCS Departments.

26. The Large Claim Committee met monthly, on the first Thursday of each month, to discuss claims that had been added to the Large Claim Report. The primary purpose of the Large Claim Committee is to track Large Claims in order to ensure Moda retains sufficient reserves. Prior to the Large Claim Committee meeting, the Medical Claims Supervisor emailed an electronic copy of the Large Claim Report to the Large Claim Committee members. In the Large Claim Committee meeting, the members discussed each case, including, but not limited to, discussion of the type of pricing, eligibility questions, authorization, and what may be expected in the future. Each claimant was included on the Large Claim Report until the Actuarial, Claims,

and HCS Departments all agreed that the member was not likely to generate further Large Claims.

### High Dollar Report

27.    During the relevant period, Moda also utilized an additional, separate process to track claims that had the potential to qualify for reinsurance reimbursement.  HCS received clinical information from medical providers and facilities treating members that indicated that the member had the potential for high-dollar claims.  This information was used to generate a report called the "High Dollar Report."  The High Dollar Report was an additional means to track members who met the threshold for reporting claims to Swiss Re.  Through the High Dollar Report, Moda also kept track of members who had the potential for high-dollar claims but were not yet close to the specified notification level.  In this way, Moda used the High Dollar Report to track members who it knew or expected to meet the reporting threshold specified in the Contract.

### Monthly Reinsurance Report

28.    Using the information collected through the Large Claim Report and the High Dollar Report, Moda generated a Monthly Reinsurance Report.  The Monthly Reinsurance Report was an *internal* report of claims paid monthly for members who hit the notification threshold provided by the Contract (50% of Moda's retention, which for Medicare business equals claims in excess of $250,000).  The Monthly Reinsurance Report was prepared by a Healthcare Data Analyst in Moda's Underwriting Department.

### Reinsurance Notification Report to Swiss Re

29.    On the basis of all of the internal procedures and reporting processes described above, Moda created a Reinsurance Notification Report each month.  This report was

specifically created to be sent to reinsurance carriers, including Swiss Re.  The Reinsurance Notification Report was prepared by Moda's Reinsurance Coordinator.  It detailed members who had reached, or who were expected to reach, 50% of the retention for the calendar year, which equals paid claims in excess of $250,000 for Medicare business.  Moda sent this report to Swiss Re once per month.

**D.    The Plan Member's Claims to Moda, and Moda's Reporting of Such Claims to Swiss Re**

30.    Moda has provided health insurance to John Doe since 2008.  Mr. Doe suffers from the underlying medical condition of hemophilia, which is a genetic disorder caused by missing or defective Factor VIII, a clotting protein.  During the relevant period, neither Moda nor Swiss Re considered hemophilia to be a medical condition that had a high risk of generating significant claims.  The common therapy to prevent or treat bleeding associated with hemophilia is replacing Factor VIII, and the availability of purified plasma-derived and recombinant Factor VIII products has led to dramatic improvements in the health and well-being of many affected by hemophilia.  Mr. Doe is a Medicare plan member, which means that he receives his health insurance through Moda as a Medicare recipient.  Mr. Doe's Medicare status also means that claims for his medical services typically are less than those members covered by commercial plans.

31.    In the ten years that Moda insured Mr. Doe—from 2008, when coverage began, through 2017, when the last claims at issue occurred—Mr. Doe met the reinsurance notification claim level in just four plan years.  Specifically, in 2011, 2013, 2016, and 2017, Mr. Doe's claims met the reinsurance notification claim level when they totaled $1,096,129, $313,163, $821,967, and $2,238,415, respectively.   During the other six years that Moda insured Mr. Doe

COMPLAINT FOR DAMAGES                                                    Page 10

(2008, 2009, 2010, 2012, 2014, and 2015), his paid claims were well below the reinsurance notification level.

32.     Mr. Doe's reinsurance claims from 2011 and 2013 resulted from surgeries.  Mr. Doe had a total hip replacement in 2011 and an emergent gastrointestinal surgery in 2013. During these surgeries, Mr. Doe required continuous infusions of Factor VIII to ensure hemostasis.   In 2015, when Moda and Swiss Re negotiated their 2016 reinsurance agreement, Moda disclosed Mr. Doe's 2011 and 2013 claims to Swiss Re as a part of the underwriting process.  In negotiating the 2016 reinsurance agreement, Swiss Re did not require or request specific disclosure of plan members with hemophilia or receiving factoring products.  At that time, Mr. Doe's paid claims for the previous year (2014) and the current year (2015) did not reach the disclosure threshold. Indeed, Mr. Doe's claim for 2014 was $45,632.82 and his claim for 2015 was $2,514.87.

33.     On September 23, 2016, Moda received a prior authorization request for Mr. Doe for a two-day hospital inpatient stay.  The requested hospital stay was evaluated by HCS.  HCS understood that Mr. Doe had hemophilia.  HCS knew that Mr. Doe had been reasonably  healthy and  was receiving  infusions  of Factor  VIII, as  needed,  when  he  experienced a bleed.  HCS understood that in September 2016, Mr. Doe was found to have developed Factor VIII Inhibitor Disorder, meaning that replacement of the missing clotting factor by infusion of Factor VIII was less effective due to the presence of alloantibodies that inhibited Factor VIII activity.   The purpose of the requested hospital stay  was to  place  a  port  and  to begin  immune  tolerance induction as treatment for Mr. Doe's bleed.  HCS knew that this condition would  normally last between three and six months, resolving after the scheduled treatment, and would not necessarily lead to a reinsurance claim.  HCS approved the requested hospital stay.

34.     Under Moda's internal procedures, only a hospital stay of thirty days or more triggered the addition of the claimant to the High Dollar Report.  Because Mr. Doe's stay was only two days, and because of HCS's knowledge of Mr. Doe's condition and treatment plan as described above, HCS did not trigger a notification to add Mr. Doe to the High Dollar Report when it authorized his September 2016 hospital stay.

35.     Mr. Doe stayed in the hospital, authorized by Moda as discussed above, from September 27, 2016, to September 29, 2016.  At this point, Moda's cumulative paid claims for Mr. Doe beginning on January 1, 2016, were $13,199.92—well below the notification threshold under the Contract.

36.     On October 5, 2016, Moda received the inpatient claim for Mr. Doe's September 2016 hospital stay, which Moda paid on October 25, 2016, in the amount of $171,061.78.  At this point, the next Large Claim Committee meeting was to be held in November 2016.  Because Moda's paid claims for Mr. Doe up to this point were below the threshold to trigger notification to the Large Claim Committee, Mr. Doe was not added to the Large Claim Report for November 2016.

37.     On October 31, 2016, Moda's cumulative paid claims for Mr. Doe in 2016 were $185,645—still well below the threshold at which Moda was required to report a member to Swiss Re under the Contract.  On November 3, 2016, Moda sent the monthly Reinsurance Notification Report to Swiss Re.  Mr. Doe was not included because his paid claims were still below the reporting threshold.  The Large Claim Committee met on November 4, 2016.  At this point, Mr. Doe's paid claims were still below the reporting threshold for the Large Claim Report, and so Mr. Doe was not discussed at the meeting.

COMPLAINT FOR DAMAGES                                              Page 12

38.    Moda sent the next monthly Reinsurance Notification Report to Swiss Re on November 28, 2016, with paid claims through November 22, 2016.  At this point, Moda and Swiss Re were negotiating a new contract for the 2017 calendar year.  Moda's reinsurance broker had previously sent a report of claims paid through August 31, 2016.  For purposes of renewing the Contract, Swiss Re also reviewed the November 22, 2016 Monthly Reinsurance Report provided by Moda rather than requiring Moda submit a separate Disclosure Statement attached to Swiss Re's reinsurance proposal quote.  At that time, the cumulative paid claims for Mr. Doe in 2016 totaled $194,275.89, which was below the $250,000 threshold for notification.  Moda did not reasonably expect Mr. Doe's claims to exceed the threshold for the 2016 year, which would end in just over a month, and Mr. Doe had not been added to the Large Claims Report or High Dollar Report.  Therefore, Mr. Doe was not included in the November 2016 Monthly Reinsurance Report.

39.    The Large Claim Committee met on December 2, 2016.  Mr. Doe did not have any Large Claims pending, and his paid claims for the year were still below the reporting threshold for the Large Claim Report.  As mentioned above, the purpose of the Large Claim policies is to identify members and claims that might require additional reserves.  Therefore, Mr. Doe was not included on the Large Claim Report or discussed at the Large Claim Committee meeting for December 2016.

40.    As of December 9, 2016, when Moda sent the next monthly Reinsurance Notification Report to Swiss Re, Moda's cumulative paid claims for Mr. Doe in 2016 totaled $194,275.89.  Though Moda had just received a large claim (containing a significant billing error) for Mr. Doe, discussed below in paragraph 41, Moda had not paid this claim in any amount, and did not have a chance to process this claim through the Large Claim Committee or

High Dollar Report processes before it sent the Reinsurance Notification Report to Swiss Re. Mr. Doe was not listed on this report because, according to Moda's internal processes, he still did not meet the reporting threshold.

41.     In December 2016, Moda received additional claims for Mr. Doe for which billing errors (made by the billing provider) delayed Moda's payment of claims. For example, on December 6, 2016, Moda received a claim for Mr. Doe for $152,392.28 in billed charges, which related to Mr. Doe's infusion of Factor VIII on or around October 28, 2016.  The bill to Moda, however, incorrectly billed only one unit of Factor VIII, and thus when Moda paid the bill on January 3, 2017, it only paid for this unit, $16.51.  (Moda ultimately received a corrected bill documenting the accurate units of Factor VIII on January 27, 2017, and Moda paid this bill in full on April 14, 2017.)

42.     On December 27, 2016, Moda received another large claim related to Mr. Doe containing a billing error.  The bill charged $152,392.27 for Mr. Doe's infusion of Factor VIII on or around November 21, 2016.  The bill incorrectly billed only one unit of Factor VIII, and thus when Moda paid the bill the next month, on January 24, 2017, it only paid for this unit, $16.51. (Moda ultimately received a corrected bill documenting the accurate units of Factor VIII on February 15, 2017, and Moda paid this bill in full on March 21, 2017.)

43.     Moda compiled its next internal Monthly Reinsurance Report on January 11, 2017.  At this point, Moda had compiled data that Mr. Doe's paid claims for 2016 totaled $274,741.62.  This was the first point at which Mr. Doe's paid claims reached the $250,000 threshold per Moda's internal reporting.  Moda had not, however, compiled this data in advance of submitting the monthly Reinsurance Notification Report to Swiss Re, which occurred on January 9, 2017.  Because of the short turnaround time from the end of the calendar year, Moda's

COMPLAINT FOR DAMAGES                                              Page 14

internal process had not yet logged Mr. Doe's claims compiled in the January 11, 2017 internal report when the January 9, 2017 Reinsurance Notification Report was sent to Swiss Re.

44.    Even through February 2017, Mr. Doe's paid claims for 2016 remained well below the $500,000 reinsurance claim level.  As of January 31, 2017, Mr. Doe's paid claims for 2016 totaled $364,271.83, and his paid claims for 2017 were $0.  As of February 28, 2017, Mr. Doe's paid claims for 2016 were $364,271.83, and his paid claims for 2017 were $142.37. When the 2016 plan year was closed for incurring further expenses, Mr. Doe's 2016 paid claims were well below the $500,000 level, and Mr. Doe's 2017 paid claims were minimal; therefore, Moda did not include Mr. Doe on the February 2017 Reinsurance Notification Report to Swiss Re.

45.    As of March 31, 2017, and in part due to receipt and payment of correct bills, Mr. Doe's paid claims for 2016 rose to $517,194.58.  At the same time, his paid claims for 2017 were $159.95.  Moda notified Swiss Re of Mr. Doe's 2016 claims and added Mr. Doe to the next Reinsurance Notice Report, which was sent to Swiss Re in April 2017.  On April 19, 2017, Moda submitted a reinsurance claim for Mr. Doe to Swiss Re for 2016 dates of service, which Swiss Re paid.

46.    On April 28, 2017, Moda sent the next Reinsurance Notification Report to Swiss Re, and Mr. Doe remained on this report due to the pattern of paid/pending claims from early 2017.

47.    As of April 30, 2017, Mr. Doe's paid claims for 2016 were $821,962.62, and his paid claims for 2017 were $149,345.  As of May 31, 2017, Mr. Doe's paid claims for 2016 were $821,962.62, and his paid claims for 2017 were $159,884.94.  As of June 30, 2017, Mr. Doe's paid claims for 2016 were $821,962.62, and his paid claims for 2017 were $619,445.37.

48.     On July 19, 2017, Moda submitted a reinsurance claim for Mr. Doe to Swiss Re for 2017.

49.     On July 28, 2017, Mr. Doe was admitted to the emergency department after he suffered a fall.  This fall was an accident and was in no way related to Mr. Doe's underlying hemophilia or Factor VIII hospital treatment.  On July 31, 2017, HCS authorized an inpatient stay for Mr. Doe to undergo spinal surgery to treat injuries he sustained in the fall, and not to address any medical condition related to his preexisting condition of hemophilia.  Upon authorizing this stay and surgery, HCS immediately sent a notification to add Mr. Doe to the High Dollar Report.  Mr. Doe underwent spinal surgery in August 2017.  Because Mr. Doe's fall and subsequent surgery were in no way related to his hemophilia, Moda could not have predicted the claims related to this event.

50.     As of July 31, 2017, Mr. Doe's paid claims for 2017 were $619,932.21.  Moda sent a reinsurance claim for Mr. Doe to Swiss Re on August 15, 2017.  As of August 31, 2017, Mr. Doe's paid claims for 2017 were $954,293.20.  On September 19, 2017, Moda added Mr. Doe to the Large Claim Report.  Moda again submitted a reinsurance claim for Mr. Doe to Swiss Re for 2017 on September 28, 2017.  As of September 30, 2017, the total paid claims for Mr. Doe were $1,002,125.74.

51.     On October 5, 2017, the Large Claim Committee discussed Mr. Doe's case.  The Large Claim Committee decided to continue to monitor and report Mr. Doe and to discuss his claims at its next meeting, in November 2017.

52.     On October 10, 2017, Moda submitted a reinsurance claim for Mr. Doe to Swiss Re for 2017.

COMPLAINT FOR DAMAGES

53.     As of October 31, 2017, the paid claims for Mr. Doe for 2017 were $2,238,414.55.  The Large Claim Committee met on November 2, 2017, discussed Mr. Doe's claims, and agreed to continue to follow his case.

54.     On November, 16, 2017, Moda submitted another reinsurance claim for Mr. Doe to Swiss Re for 2017.

55.     As of November 30, 2017, the paid claims for Mr. Doe for 2017 were $2,239,371.22.  The Large Claim Committee met on December 7, 2017, discussed Mr. Doe's claims, and removed Mr. Doe from the Large Claim Report because a majority of his claims were paid already.

56.     On December 13, 2017, Moda submitted a reinsurance claim for Mr. Doe to Swiss Re for 2017.

57.     As of December 31, 2017, the paid claims for Mr. Doe for 2017 were $2,268,253.42.  Moda submitted another reinsurance claim for Mr. Doe for 2017 to Swiss Re on January 22, 2018.

**E.     Moda Complied with All Terms of the Contract in Reporting Mr. Doe's Claims to Swiss Re**

58.     Moda first notified Swiss Re of Mr. Doe's potential for 2017 reinsurance claims in the Reinsurance Notification Report submitted in April 2017.  Moda was not required by the Contract to notify Swiss Re of Mr. Doe's claims before this because Mr. Doe's claims in 2017 thus far were below the reporting or claims threshold, and Moda did not expect that they would exceed the threshold prior to this date of disclosure.  From this point forward, Moda kept Mr. Doe on the notification reports to Swiss Re.

59.     Moda was not required to disclose Mr. Doe's 2016 claims on the November 22, 2016 Reinsurance Notification Report, which Swiss Re reviewed for purposes of entering the

Contract for the 2017 calendar year.  While the final paid amount for 2016 was considerable, Moda could not have predicted this, even near the end of 2016.  On November 28, 2016, at the time of the November 2016 Monthly Reinsurance Report, Mr. Doe's claims were only $194,275.89, which is safely below the Contract's disclosure threshold, and more than $300,000 below the claims level.

60.     Although Mr. Doe was diagnosed with hemophilia, his recent history with Moda provided no indication that he would be a potential reinsurance claimant in 2017.  In fact, in 2014 and 2015, Mr. Doe's paid medical claims were not even close to the threshold for reporting:   In 2014, his paid medical claims were $45,632.82; in 2015, Moda paid only $2,514.87.   And hemophilia, by itself, was not an illness that Moda viewed as creating a likelihood of high claims. Swiss Re did not view hemophilia as a medical condition that necessarily led to high claims either—in entering their 2016 reinsurance agreement, Swiss Re did not require disclosure of all plan members diagnosed with hemophilia or receiving infusions of Factor VIII.

61.     Although Moda was aware in 2016 that Mr. Doe received Factor VIII treatment, this diagnosis did not necessarily mean that claims would be excessive because the condition typically resolves quickly after treatment.

62.     Medicare plan members, which Mr. Doe was, ordinarily incur significantly lower healthcare fees than those members with commercial plan coverage, because Medicare rates for medical care and supplies are lower than commercial rates.  This fact supported Moda's belief that its claim processing for 2016 was accurate and that Mr. Doe's claims did not exceed the disclosure threshold.

63.     Finally, Moda could not have known in 2016 that Mr. Doe's 2017 claims would exceed the disclosure threshold because the majority of Mr. Doe's 2017 claims were unrelated to his 2016 claims or primary medical condition.  The bulk of Mr. Doe's 2017 claims were related to his spinal surgery and subsequent recovery that were caused by a fall he suffered in 2017 and were completely unrelated to his hemophilia.  Obviously, there was no way for Moda to have predicted in 2016 that Mr. Doe would suffer a fall in 2017 that would necessitate a complicated spinal surgery and arduous recovery.

64.     Given Mr. Doe's past history and the fact that the bulk of his claims were the result of an unanticipated accident, there was no reason for Moda to expect in 2016 that his claims would exceed $250,000 for 2017.  Therefore, Moda was not required to call out Mr. Doe's claims to Swiss Re in 2016.

65.     In the event that there were any delays between Moda's knowledge of, and disclosure of, claims exceeding reinsurance reporting and claims thresholds, such delays were unintentional and timely corrected and do not excuse Swiss Re from its obligations under the Contract.  Article XIV of the Contract provides that "[a]ny inadvertent delay, omission or error shall not be held to relieve either party hereto from any liability which would attach to it hereunder if such delay, omission or error had not been made, provided such omission or error is rectified upon discovery."  *See* Exhibit 1, Contract.

**F.     Swiss Re's Refusal to Pay the 2017 Reinsurance Claims Associated with Mr. Doe**

66.     Moda submitted reinsurance claims for Mr. Doe in 2017 on at least seven separate occasions—on July 19, 2017, August 15, 2017, September 28, 2017, October 10, 2017, November 16, 2017, December 13, 2017, and January 22, 2018.

COMPLAINT FOR DAMAGES                                                    Page 19

67.     Swiss Re has refused to pay any 2017 reinsurance claims for Mr. Doe.  Swiss Re initially reimbursed claims from the earlier part of 2017, totaling $502,125.74, but then recouped these reimbursements.  Swiss Re alleges that Moda was obligated to, and failed to, disclose Mr. Doe in 2016 as a potential reinsurance claimant for 2017.  As of this date, the 2017 reinsurance claims for Mr. Doe remain unpaid by Swiss Re.  Swiss Re's allegation that Moda did not properly disclose a plan member provides Moda with a right to litigate, rather than arbitrate, this dispute.  Exhibit 1, Contract, Article XXIX (B)(1).

### V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

68.     Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 67 of this Complaint.

69.     Moda complied with all of the material terms of the Contract.   Moda did not list Mr. Doe on its Monthly Reinsurance Report for November 2016 because, at that time, Mr. Doe's claims had not reached the threshold provided for by the Contract and there was no indication at that time that Mr. Doe would reach the threshold, much less the claims level.  Neither Moda nor Swiss Re could have predicted that Mr. Doe would need additional treatment related to his existing conditions in 2017 or that he would fall in 2017, requiring spinal surgery and involving a complicated recovery that generated significant medical claims.  Moda did not submit the Disclosure Statement because Swiss Re explicitly waived that requirement.  Once Moda became aware that Mr. Doe's 2017 claims could reach the threshold required for reporting under the Contract, Moda promptly reported the claims to Swiss Re.  Therefore, Moda performed fully under the Contract and did not commit a breach.

70.    Despite Moda's complete performance, Swiss Re refused to pay Moda the amounts due for Mr. Doe's claims under the Contract.  This constitutes a breach.

71.    Swiss Re's breach resulted in damage to Moda in the amount of $1,802,674.10.

72.    The Contract provides for an award of costs and expenses as are appropriate, including but not limited to attorney fees.  Exhibit 1, Contract, Article XXIX (H).

## VI.    DEMAND FOR RELIEF

Moda requests that the court enter judgment as follows:

A.  A money award in favor of Moda and against Swiss Re in the principal amount of $1,802,674.10;

B.  An award of Moda's attorney fees, costs, and disbursements as permitted by law or equity;

C.  Prejudgment and postjudgment interest at the rate of 9% per annum, under ORS 82.010; and

D.  Such other relief that the court deems just and equitable under the circumstances.

## VII.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and the Local Rules of this Court, Plaintiff demands a trial by jury of any and all issues in this action so triable.

DATED: November 2, 2018.

LARKINS VACURA KAYSER LLP

s/ William L. Larkins, Jr.
William L. Larkins, Jr., OSB #812882
wlarkins@lvklaw.com
John C. Rake, OSB #105808
jrake@lvklaw.com
Bridget M. Donegan, OSB #103753
bdonegan@lvklaw.com
Larkins Vacura Kayser LLP
    Attorneys for Plaintiff Moda Health Plan, Inc.